## LATHAN v. WESTERN UNION TELEGRAPH CO.

1. DAMAGES.—IF FAILURE TO DELIVER A COMMERCIAL TELEGRAM offering a lot of meal at a certain price was the direct and proximate cause of the delay on the part of the addressee in postponing the purchase of meal, whereby he was compelled, when he went into the market later, to pay an advanced price, he would be entitled to damages, although there was no evidence establishing the fact that he would have accepted the offer, but such evidence is admissible to show the intent and motive of the addressee in postponing the purchase as explanatory of the delay.

MR. JUSTICE JONES says that the offer would have been accepted was made legally certain and the measure of damages in this case is the difference between the price offered and price at which addressee could have bought after notice of non-delivery of message.

*Beatty Lumber Co.* v. *Western Union Tel. Co.*, 44 S. E. R., 410, *distinguished from this.*

2. WILFULNESS.—Changing name of addressee to that of his competitor and delivering message to him, is evidence of reckless disregard of addressee's rights.

3. APPEAL.—Admission of irrelevant evidence is not reversible error unless there be abuse of discretion in its admission.

Before PURDY, J., Chester, April Term, 1905.  Affirmed.

Action by S. R. Lathan against Western Union Telegraph Co.  From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons* and *J. H. Marion,* for appellant, cite: *If message contains no notice of damages likely to result from non-delivery nor company notified of any, none are recoverable:* 40 S. C., 524; 72 S. C., 290; 70 S. C., 418, 539. *No notice that plaintiff would accept offer:* 21 Minn., 155; 18 Up. Can. Q. B., 60; 44 N. Y. Supt. Ct., 487; 29 So., 789; 44 S. E. R., 309; 98 Mass., 232; 11 Am. R., 156; 41 N. Y., 544; 65 S. C., 492. *No evidence of actual loss:* 70 S. C., 19; 124 U. S., 444; 14 Am. R., 775; Sedg. on Dam., sec. 889; 8 Ency., 610; 1 McC., 489; 18 Ency., 403; 60 S. C., 72; 65 S. C., 492. *Nothing to sustain a recovery for punitive damages:* 61 S. C., 190; 72 S. C., 116, 343, 350; 12 Ency., 30; 38 Kan., 572; 74 S. W., 1098; 66 Kan., 660; 60 S. C., 72. *Plaintiff cannot recover on evidence as to what he would have done if he had received the message:* 44 S. E., 312; 60 N. E., 677. *Plaintiff not entitled to profits which he thinks he would have made:* 27 Ency., 1667; Thom. on Elec., 341; 25 S. C., 68; 6 So., 70.

*Messrs. Caldwell & Gaston,* contra.  *Mr. Caldwell* cites: *If defendant decreased plaintiff's profits or increased his loss, it is liable to plaintiff:* 69 Am. Dec., 718; 27 Ency., 1069; 128 Ill., 148; 139 U. S., 206; 70 S. C., 16; 60 S. C., 201; 58 S. C., 373. *Change of name of addressee supports punitive damages:* 65 S. C., 128, 516; 64 S. C., 514. *Failure of telegram caused non-action of plaintiff, and this caused him loss:* 27 Ency., 1069; 128 Ill., 148; 69 Am. Dec., 718; 60 S. C., 201; 70 S. C., 16; 40 L. R. A., 209.

STATEMENT OF FACTS.

This is an action for damages, alleged to have been sustained by the plaintiff, through the negligence and wilfulness of the defendant, in failing to deliver a telegram. The complaint, omitting the formal portions thereof, alleges:

"1. That on the 30th day of May, 1903, the Lynchburg Milling Company, of Lynchburg, Va., presented to and filed with the said defendant, at its office in said city of Lynchburg, the following message: 'May 30th, 1903. S. R. Lathan, Chester, S. C. One Thirty June shipment near time stated as possible. Quick. Lynchburg Milling Company.'

"2. That said defendant had notice of the importance of said message, and the loss and damage that would likely fall upon the plaintiff, if said message was not promptly and correctly transmitted and delivered to said plaintiff.

"3. That said message was not delivered to the plaintiff but to R. R. Moffatt, who, as defendant well knew, was his competitor in business.

"4. That said Lynchburg Milling Company sent said message to said plaintiff in response to said plaintiff's request for quotations on five carloads of meal, containing 300 sacks, each to be shipped to said plaintiff, as follows: One car on June 5, one car on June 10, one car on June 17, one car on June 23, and one car on June 30th, following.

"5. That at the same time said request for quotations as above was made of the Lynchburg Milling Company, similar requests were made of other meal manufacturers, who do business in plaintiff's territory, and the lowest price made plaintiff in reply by any of them, was one dollar and thirty-eight cents per sack.

"6. That at said time said plaintiff's stock of meal was low, and his trade in said article exceedingly good; that the market price of said article was constantly and rapidly advancing, and that but for the gross carelessness, negligence and wantonness of the said defendant, in failing to correctly and promptly transmit and deliver said message, said plaintiff

would have accepted said quotation in said telegram contained, and thereby have bought five carloads of meal, containing 300 sacks each, at $1.30 per sack.

"7. That by reason of the gross carelessness, negligence and wantonness of the defendant, in failing to correctly and promptly transmit and deliver said message as aforesaid, said plaintiff was not only prevented from buying the five cars of meal in which he would have had profit, of some $230, by the advance in the market price alone, by the time it would have reached his warehouse, but was prevented from making several sales at a great profit, was damaged greatly in his reputation for promptness and for ability to supply his trade, and was forced to buy what meal he did buy at a much higher price—all to his hurt and damage in the sum of $500."

At the close of the plaintiff's testimony the defendant made a motion for a nonsuit, which was refused.

The defendant did not offer any testimony.

The jury rendered a verdict in favor of the plaintiff for $150, and the defendant appealed.

OPINION.

September 6, 1906.   The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the facts).   The first question that will be considered, is that presented by the exceptions, in which the appellant contends that the right to recover damages was dependent upon the fact that the plaintiff would have accepted the offer mentioned in the telegram, and that such fact was conjectural and uncertain, and, therefore, could not be considered in determining the defendant's liability for damages.

A reasonable interpretation of the telegram is that it related to a contemplated contract of sale, in which the article of merchandise was to be shipped during the month of June at the time stated in a previous communication to the Lynchburg Milling Company, to which the message was a reply,

and that it was necessary for the addressee to act promptly. The message showed upon its face that a failure to deliver it might naturally and reasonably be expected to cause delay on the part of the plaintiff in purchasing the desired article, and as a probable result that he would be compelled when he thereafter went into the market to pay a higher price than that stated in the telegram. There was testimony to the effect that the plaintiff received notice on or about the 3d of June of the defendant's failure to deliver the message; that on the 3d of June he sent a telegraphic message to the Lynchburg Milling Company, offering $1.31 per sack for three carloads of meal, and on the same day the Lynchburg Milling Company, in response, sent the following telegram: "One thirty-five, lowest June shipment. Quick reply. Market strong;" that instead of sending a telegram, he wrote a letter to them accepting the offer, for one carload of meal, but as their offer had not been accepted with promptness, they declined to sell at $1.35; that on the 11th of June he bought three carloads at $1.40, and a few days thereafter purchased more meal at $1.44; that he would have accepted the offer of $1.30 on the 30th day of May, and that the delay in buying was directly caused by the failure to deliver the message, in consequence of which he was compelled to buy at an advanced price.

Among the cases upon which the appellant relies to sustain the proposition that evidence as to whether the plaintiff would have accepted the offer contained in the telegram, cannot be considered on the ground that it is conjectural and uncertain, is that of *Beatty L. Co.* v. *Tel. Co.,* 44 S. E. R. (W. Va.), 309, in which the authorities are reviewed. The case was well considered and strongly supports the appellant's contention. It is predicated upon the theory, that when there is a failure to deliver a telegram containing an offer to sell, and the market advances in price, the addressee cannot recover damages, unless it is made to appear that he would have accepted the offer, and that the testimony of the addressee that he would have accepted the offer cannot be

considered in determining the company's liability, on the ground that it is conjectural and uncertain. The fallacy in the reasoning of the Court in that case, is in supposing that the telegraph company would not be liable, unless it was shown that the addressee would have accepted the offer. If the failure to deliver the telegram was the direct and proximate cause of the delay on the part of the plaintiff, in postponing the purchase of meal, whereby he was compelled, when he went into the market, to pay the advanced price, he would be entitled to recover damages, although there was no testimony establishing the fact that he would have accepted the offer. Such testimony, however, is admissible for the purpose of showing the intent and motive of the plaintiff, in postponing his purchases, on the ground that it is explanatory of the delay.

The next question that will be considered is whether the presiding Judge erred in overruling the motion for nonsuit, on the ground that there was no testimony tending to show wantonness, wilfulness or recklessness, entitling the plaintiff to punitive damages. The entire name of the addressee was changed and the message was delivered to his competitor in business. This afforded at least some evidence of a reckless disregard of the plaintiff's rights.

These views practically dispose of all the exceptions, except those assigning error on the part of the presiding Judge, in permitting the plaintiff to introduce certain testimony, which the appellant contends was irrelevant. Such testimony must necessarily be left in great measure to the discretion of the presiding Judge, and his ruling will not be reversed, unless there was abuse of discretion, which the appellant has failed to show in this case.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Mr. Justice Jones. I concur in affirming the judgment. The case of *Wallingford* v. *Tel. Co.*, 53 S. C., 410, is authority for the proposition that a telegraph company is liable

in damages for failing to deliver a telegram containing an offer to buy a carload of mules at a specified price, whereby the plaintiff lost the opportunity to make said sale, which he would have made had the telegram been delivered in time, thereby compelling the plaintiff to keep the mules for a time at expense and to subsequently sell them at a price less than the price offered. In that case, the measure of damages was the difference between the price offered and the best market price for which the mules could have been then sold, if less than the price offered. The present case is a corollary of that. The telegram contained an offer to sell, and there was testimony, from which it could be inferred with reasonable certainty, that the purchase would have been made if the telegram had been delivered. By reason of the failure to deliver the telegram the plaintiff was rendered unable to buy meal at $1.30 per sack and was compelled to buy later at an advance, $1.40 and $1.44 per sack, but as plaintiff had it in his power to buy at $1.35, after being aware of the non-delivery of the telegram, his actual loss must be limited to the difference between the price offered and the price at which he could have bought. As there are 1,500 sacks in five cars of meal, plaintiff's actual loss as a result of the non-delivery of the telegram did not exceed $75. But as I agree with the view that there was some evidence of recklessness, as pointed out by Mr. Justice Gary, there is no ground for disturbing the verdict for $150.

This case is easily distinguishable from the case of *Beatty Lumber Co.* v. *W. U. Telegraph Co.*, 44 S. E. Rep. (W. Va.), 309, as in that case there was no purchase at a higher price in consequence of the failure to deliver the telegram, and hence no certain loss. In so far as the West Virginia case holds that there could be no actual damages for non-delivery of a telegram containing an offer to sell, unless it appears with legal certainty that the offer would have been accepted and a sale or contract of sale consummated, it is in accord with *Wallingford* v. *Tel. Co.*, 53 S. C., 410, but in so far as the West Virginia case may be construed as holding

that it is not a provable matter whether an offer to sell would have been accepted, it is inconsistent with the Wallingford case. In the Wallingford case the fact that the offer would have been accepted and a sale consummated was made legally certain by the allegations of the complaint admitted by the demurrer. In this case, the fact that the offer would have been accepted was made legally certain, not merely by the declaration of the plaintiff as to what he would have done, but by the other circumstances in the case tending to show that a reasonably prudent person in his situation would have accepted the offer. The evidence tended to show that his business was to buy and sell meal, that it was necessary for him to have meal to supply his customers, that he had asked for quotations with a view to purchase and was awaiting the telegram before purchasing, and especially that he actually did purchase at a higher price when the non-delivery of the telegram was discovered. The loss sustained, to the extent of five cents per sack, was not contingent or speculative, but certain and definite, and was the natural and proximate result of the failure to deliver the telegram.